UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VARIBLEND DUAL DISPENSING SYSTEMS LLC,

Plaintiff,

-against-

CRYSTAL INTERNATIONAL (GROUP) INC. and
GERHARD BRUGGER,

Defendants.

---

GERHARD BRUGGER,

Counterclaim-Plaintiff,

-against-

VARIBLEND DUAL DISPENSING SYSTEMS LLC,
J. BURKE CAPITAL PARTNERS LLC, and JBCP-
24 LCC,

Counterclaim-Defendants.

---

**OPINION AND ORDER**

18 Civ. 10758 (ER)

Ramos, D.J.:

VariBlend Dual Dispensing Systems ("VariBlend") first brought this action against

Crystal International (Group) Inc. ("Crystal") and Gerhard Brugger, alleging breach of contract

against Brugger and tortious interference with contract and unfair competition against Crystal.

Brugger responded by asserting counterclaims against VariBlend, as well as against additional

parties J. Burke Capital Partners LLC ("J. Burke") and JBCP-24 LLC ("JBCP") ("collectively,

"Counterclaim-Defendants").  Following this Court's September 30, 2019 decision on the

Counterclaim-Defendants' partial motion to dismiss, Brugger and Crystal each filed Amended

Answers and Counterclaims on December 17, 2019 (the "Amended Counterclaims").  Docs. 45,

46.  Before the Court is VariBlend's motion to dismiss Counts II, III and V of Brugger's

Amended Counterclaims, and to dismiss Crystal's Amended Counterclaims in their entirety.  For

the reasons discussed below, VariBlend's motion is GRANTED.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Licensing Agreement

The facts underlying this action are discussed in more detail in the Court's September

2019 Opinion and Order regarding Counterclaim-Defendants' partial motion to dismiss.  *See*

*VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Group) Inc.*, 18 Civ. 10758 (ER), 2019

WL 4805771 (S.D.N.Y. Sept. 30, 2019) ("*VariBlend I*").  The Court discusses only the facts

relevant to the resolution of this motion.

Brugger is an inventor with experience designing dispensers for beauty products.  Doc.

46, Brugger Amended Counterclaims ¶ 9.  Brugger's father, Anton, was also an inventor and has

patented technology referred to by the parties as "variable-flow disc technology."  *Id.* ¶ 10.

Products using variable-flow disc technology include dispensers with multiple fluid-filled

compartments and an "adjustable disc system that can be used to vary and proportion the flow of

fluid dispensed from each compartment."  *Id.*  Anton Brugger assigned and transferred all of his

rights, title and interest in and to the patent to Brugger.  *Id.*

In April 2010, Brugger entered into a licensing agreement with VariBlend and JBCP

regarding the variable-flow disc technology (the "Agreement").[1]  As part of the Agreement,

Brugger granted VariBlend an exclusive right to license, manufacture, distribute or develop a

"Dispenser (together with any Improvements)," as those terms were defined therein.  *Id.* ¶ 17.

---

[1] JCBP was a guarantor of Brugger's minimum royalty payments under the Agreement.  *See* Doc. 57-3, Agreement, at § 5.2.

"Dispenser," as defined, included the patent assets directed to Brugger's variable-flow disc technology. *Id.* ¶ 19.

In exchange for the rights granted to it in the Agreement, VariBlend agreed to certain royalty and minimum sales obligations, among other duties. *Id.* ¶ 23. In § 5.1 of the Agreement, VariBlend agreed to pay Minimum Royalties to Brugger according to an annual payment schedule. *Id.* ¶ 24. Section 5.1 of the Agreement further included a requirement that, "[s]tarting at month 25 [VariBlend] will have to sell such level of the Products to pay the minimum royalties as set forth in the [minimum royalty] table . . . ." *Id.* ¶ 25. Section 5.3 also provided that "the royalty obligation of [VariBlend] is an absolute payment obligation whether same are earned or not and failure to make payment thereof is a material default." *Id.* In other words, if VariBlend failed to make the minimum royalty payments under the Agreement, or if it failed to sell a sufficient amount of products to trigger the minimum royalty payments, it would be in breach and Brugger could terminate the contract.

VariBlend also covenanted that it would market and commercialize the Products. Specifically, it promised "to use, apply, and direct its best efforts to promote the sale or other disposition of the Dispenser and the Products," and "to conduct all of [its] operations . . . in compliance in all material respects with all applicable laws, rules and regulations of all applicable governing authorities." *Id.* ¶ 26 (citing the Agreement §7.1 and §7.2). In § 2.4, VariBlend also agreed to "at all times use its commercially reasonable efforts to commercialize the Dispenser. *Id.* ¶ 27.

## B.   The Competing Allegations of Misconduct and Breach

The Agreement broke down and both parties allege several material breaches of the contract, as well as related state law claims. VariBlend first filed suit in May 2018, alleging that

Brugger circumvented his obligations under the Agreement by developing similar pump technologies with his cousin, Werner Holzmann, and patenting these in Holzmann's name. *See* Compl., Doc. 57-4, at ¶ 16. VariBlend has asserted that these patents are covered by the Agreement, either as Dispensers, Improvements, or "adjustable mixing ratio" dispensers. *Id*. ¶ 18. VariBlend has further alleged that Brugger conspired with Crystal, a competing dual pump manufacturer, to secure these patents, "with the ultimate goal of having Crystal produce products containing the Licensed Technology" from which Brugger and Crystal would benefit. *Id.* ¶ 22.

Brugger denies these allegations and has alleged several counterclaims. Brugger alleges that VariBlend did not make adequate efforts to commercialize the Dispenser. For example, he alleges that it failed to produce any Dispensers from 2010 to 2011, and failed to address quality control problems with the Dispensers or to integrate new technologies. Doc. 46 ¶¶ 29–33. Brugger also alleges that VariBlend failed to meet its minimum sales obligations under the Licensing Agreement. *Id.* ¶ 34. He alleges that when he contacted VariBlend about this issue in December 2011, VariBlend assured him that its "current business plan and projections" would meet the sales requirement moving forward. *Id.* Brugger also alleges that VariBlend failed to inform him of an Improvement that VariBlend had itself developed, in violation of § 1.2.4.1 of the Agreement, until he alerted them to the Improvement. *Id.* ¶¶ 54–55. Under § 1.2.4.1, Brugger would receive "an irrevocable, perpetual worldwide royalty-free license to use any such Improvement [made by VariBlend.]" *Id.* ¶ 54.

Brugger further alleges that, beginning in 2014, VariBlend falsified invoices to hide that it continued to fail to meet its annual sales requirements under the Agreement. *Id.* ¶ 35. The alleged scheme involved generating false invoices for the Dispensers, and falsifying transactions to make it appear as if third parties had bought Dispensers at grossly inflated prices. *Id.* ¶¶ 35–

42.  One of these third parties had a business address that was also the home address of one of VariBlend's executives.  *Id.* ¶ 40.  Brugger alleges that, because this scheme hid VariBlend's failure to meet the minimum sales requirements, he did not terminate the Agreement or enter into other business agreements.  *Id.* ¶ 42.  For example, Brugger alleges that, at least at the time of the Agreement, he had been in independent negotiations with two other companies, A.W. Faber-Castell Cosmetics GmbH ("Faber-Castell") and Seidel GmbH ("Seidel") regarding licensing agreements.  ¶¶ 107, 111.  He also alleges that he could have self-produced the Dispenser and Products.  ¶ 116.

Brugger alleges that VariBlend breached the Agreement in March 2018, after several unsuccessful attempts to pressure Brugger to change its terms.  He alleges that the CEO of JBCP (which Brugger alleges controls VariBlend) emailed Brugger on March 9, 2018, to inform him that it would stop funding VariBlend due to its obligations under the Agreement.  *Id.* ¶ 47.  On March 15, 2018, VariBlend informed Brugger that it could not make any payments due under the Agreement.  *Id.* ¶ 48.  While the Agreement terminated in March 2018, Brugger alleges that VariBlend has continued to breach the Agreement by failing to return Brugger's materials, improperly selling information to Brugger's competitors, and failing to give Brugger access to its books and records.  *Id.* ¶¶ 51–52.

### C.    Procedural History

VariBlend first filed an action against Brugger and Crystal in New York Supreme Court on or about May 15, 2018.  Doc. 1, Notice of Removal.  On November 16, 2018, Brugger answered, asserting several counterclaims and adding the JBCP parties as Counterclaim-Defendants.  Doc. 1-3.  Brugger also removed the case to this Court the same day.

VariBlend then filed a motion to remand the case to state court, as well as a motion to partially dismiss Brugger's counterclaims for breach of contract, fraud, and tortious interference under Federal Rule of Civil Procedure 12(b)(6); and to dismiss Brugger's declaratory judgment action under Rule 12(b)(1).[2]  *See* Docs. 19, 25.  In an Opinion dated September 30, 2019, the Court denied VariBlend's motion to remand the action, but granted without prejudice the motion to dismiss the claims for breach of contract, fraud, and tortious interference as to the JBCP parties.  Doc. 37.  The Court, however, denied Counterclaim-Defendants' Motion to partially dismiss the breach of contract claim as to VariBlend.  *Id.*

Crystal and Brugger filed Amended Answers and Counterclaims on December 17, 2019. Docs. 45, 46.  VariBlend filed this motion on March 13, 2020.

## II.    LEGAL STANDARD

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)).  "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).

---

[2] The Motion to Dismiss was filed on behalf of all Counterclaim-Defendants.

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## III.   DISCUSSION

VariBlend moves to dismiss three counts of Brugger's Amended Counterclaims: Count II (alleging fraud); Count III (alleging a breach of the implied covenant of good faith and fair dealing); and Count V (seeking a declaratory judgment). VariBlend also moves to dismiss the entire Crystal Counterclaim, which also seeks declaratory judgments. The Court addresses these arguments in turn.

### A.   Brugger's Fraud Counterclaim

In his Amended Counterclaim, Brugger re-asserts his fraud claim against VariBlend, alleging that it falsified invoices to represent that it had met its minimum sales obligations under

the Agreement.  *See* Doc. 46 ¶¶ 96–122.  To prevail on a claim of fraud under New York law, a

plaintiff must show that "(1) the defendant made a material false representation, (2) the

defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the

representation, and (4) the plaintiff suffered damage as a result of such reliance."

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)

(quoting *Banque Arabe et Internationale De'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 153

(2d Cir. 1995)).  When pleading a claim for fraud in federal court, claimants must adhere to Rule

9(b) of the Federal Rules of Civil Procedure, which requires claimants to "state with particularity

the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Consequently,

allegations that "fail to specify the time, place, speaker, and . . . content" of the alleged fraud

"lack the particulars required by Rule 9(b)."  *Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986)

(citation and internal quotation marks omitted); *accord Stevelman v. Alias Rsch. Inc.*, 174 F.3d

79, 84 (2d Cir. 1999) (explaining same).  Nonetheless, the "adequacy of particularized

allegations under Rule 9(b) is case- and context-specific."  *United States ex rel. Chorches for

Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (alterations

omitted) (quoting *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 236 (2d Cir.

2015)).

The Court dismissed Brugger's fraud claim in *VariBlend I*, finding that he did not

properly allege damages resulting from VariBlend's alleged falsification of invoices.  2019 WL

4805771, at \*21–22.  There, Brugger claimed damages of "lost royalty payments and lost

business opportunities" stemming from the alleged fraud.  *Id.* at \*21.  The Court explained that

Brugger's counterclaim failed to pinpoint any specific lost business opportunities, which would

allow Brugger to show the "difference between what he was actually paid under the falsified invoice scheme and what he could potentially have been paid." *Id.*

Brugger has attempted to remedy this deficiency by alleging damages with more particularity. Doc. 46 ¶¶ 96–122. Brugger again alleges that, as a result of VariBlend's fraudulent invoicing from April 2014–17, he was unable to terminate the Agreement and that "[h]is losses include at least lost royalty payments and lost business opportunities." *Id.* ¶¶ 99–105. This time, however, Brugger also alleges that, in reliance upon VariBlend's fraudulent representations, he passed on the opportunity to license the patented technologies to Faber-Castell and to Seidel. *Id.* ¶¶ 106–14. Brugger contends that he had been negotiating with Faber-Castell, and with Seidel, "at least at the time [he] entered into the contract with VariBlend" on April 15, 2010. *Id.* ¶¶ 107, 111. He further alleges that these opportunities also "would have been available to [him] at least during the times at which VariBlend made material misrepresentations regarding the falsified sales invoices." *Id.* ¶¶ 109, 113. Brugger also contends that, "at least as of the time [he] entered [into] the contract with VariBlend," both Faber-Castell and Seidel "possessed manufacturing equipment" to produce the products exclusively licensed to VariBlend. *Id.* ¶¶ 108, 112. Finally, he alleges that he could have self-produced the Dispenser and Products. *Id.* ¶ 116. Brugger argues that as a result of these lost opportunities, he was prevented from "generat[ing] greater revenue than he did under the License Agreement (with the falsified sales invoices)."[3] *Id.* ¶ 117.

---

[3] Brugger further details the amounts by which the revenues from opportunities with Faber-Castell and with Seidel each would have surpassed the actual revenues received under the alleged "falsified invoice scheme." *Id.* ¶¶ 117–21. However, Brugger does not allege facts showing how he would have generated greater revenues by self-producing the technology. *See id.*

### i.       Lost Business Opportunities with Faber-Castell and Seidel

As the Court explained in *VariBlend I*, New York follows the "out-of-pocket" rule for fraud damages.  2019 WL 4805771, at *21.  This rule provides that "the true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong."  *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) (internal quotation and citation omitted).  "Those losses must be the direct, immediate, and proximate result of the misrepresentation" and "must also be independent of other causes."  *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993) (internal citations omitted).  "If the fraud causes no loss, then the plaintiff has suffered no damages."  *Connaughton v. Chipotle Mexican Grill, Inc.*, 75 N.E.3d 1159, 1163 (N.Y. 2017) (internal quotation and citation omitted).  The out-of-pocket rule does, however, "permit[] recovery for a plaintiff's reliance interest, including damages incurred by passing up other business opportunities."  *Schonfeld v. Hilliard*, 218 F.3d 164, 183 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 n.6 (2d Cir. 1986)).

Brugger has pleaded that he was "in negotiations" regarding licensing opportunities with Faber-Castell and Seidel by "at least 2010," but that he forewent those opportunities to enter into an exclusive agreement with VariBlend.  Doc. 46 ¶¶ 107, 110, 111, 114.  However, Brugger does not allege that negotiations with Faber-Castell or Seidel continued after he entered into the exclusive agreement with VariBlend and into 2014–17, the period during which the fraud allegedly occurred.  *See id.* ¶¶ 107, 111.  Brugger simply alleges that these business opportunities "would have been available to [him]" when the allegedly fraudulent misstatements were made, and that Faber-Castell and Seidel possessed adequate manufacturing equipment.  *See, e.g.*, ¶¶ 108–09, 112–13.  Thus, the question before the Court is not whether Brugger forewent business

opportunities in 2010 when the Agreement was signed, but whether he has plausibly alleged

damages stemming from foregoing business opportunities during the period of VariBlend's

alleged fraud.

Both Brugger and VariBlend rely heavily on *Doehla v. Wathne Ltd., Inc.*, No. 98 Civ.

6087 (CSH), 2000 WL 987280 (S.D.N.Y. July 17, 2000) and *Rather v. CBS Corp.*, 68 A.D.3d 49

(N.Y. App. Div. 2009) to support their respective arguments.[4]  However, the Court finds that the

facts of these cases better support VariBlend's position.

In *Rather*, the plaintiff asserted a fraud claim, alleging that his employer's

misrepresentations about the status of his employment caused him to remain with the employer

instead of pursuing employment elsewhere.  *Rather*, 68 A.D.3d at 58.  He claimed that other

employment opportunities would have been quite lucrative based on an alleged "agreement-in-

principle" with his employer that existed prior to the alleged misrepresentations.  *Id.*  The First

Department affirmed the trial court's dismissal of the fraud claim, finding that the plaintiff

"never identified a single opportunity with specified terms that was actually available to him and

which he declined to accept because of [his employer's] actions."  *Id.* at 59.  Instead, the plaintiff

could only point to a prior "unwritten proposal that contemplated a contract extension" as

evidence that lucrative opportunities would have been available to him.  *Id.* at 58.

Similarly here, Brugger has not identified "a single opportunity *with specified terms that*

*was actually available to him*" at the time of his reliance on the allegedly fraudulent invoices.

*See id.* at 58–59 (emphasis added); Doc. 59 at 11.  While Brugger has alleged that he had

specific business opportunities actually available to him in 2010 when he entered into the

---

[4] In *Rather*, the court found that the plaintiff failed to sufficiently support his claim for lost business opportunities, *Rather*, 68 A.D.3d at 54–55, while in *Doehla*, the court found that the plaintiff's factual allegations "adequately set forth a claim for damages proximately caused by Defendant's alleged fraud."  *Doehla*, 2000 WL 987280, at *3–4.

contract with VariBlend, he has not alleged facts indicating the actual existence of such opportunities during the period of VariBlend's alleged fraud.  *See* Doc. 46 ¶¶ 106–14.  Here, as in *Rather*, the alleged facts refer not to a cognizable business opportunity that the plaintiff forewent as a result of the fraud, but rather only to speculative agreements with undeterminable terms.  *See id.*; *see also In re MarketXT Holdings Corp.*, No. 04-12078 (ALG), 2006 WL 2864963, at *21 (Bankr. S.D.N.Y. Sept. 29, 2006) (holding that the out-of-pocket rule applies "when the existence of the alternative contractual bargain is undeterminable and speculative").

Brugger also cites to *Doehla*, which the Court cited in *VariBlend I*, to argue that the alleged lost business opportunities are sufficiently specific.  In *Doehla*, the plaintiff resigned his position with his then-current employer in reliance on the defendants' misrepresentations, and accepted an offer of employment with the defendants.  2000 WL 987280, at *3.  In doing so, he turned down a lucrative, long-term offer of employment that had actually been offered to him by his prior employer.  *Id.*  The plaintiff's resignation and rejection of that offer "immediately preceded" his acceptance of the fraudulently induced employment offer.  *Id.* at *9.  The court in *Doehla* denied the defendants' motion to dismiss, finding that the plaintiff had sufficiently alleged that "the [d]efendants' fraud induced him to decline a lucrative position [with his then-current employer] which, once foregone, was gone forever."  *Id.* at *7.

This case differs from *Doehla* because VariBlend's alleged fraud far from "immediately preceded" Brugger foregoing any business opportunities; instead, Brugger passed up those opportunities approximately four years before VariBlend's alleged fraud began.  *See id.* at *9; Doc. 46 ¶¶ 7, 99–100.  Further, while the *Doehla* plaintiff alleged that he resigned from his position and turned down an actual contract offer from his prior employer, Brugger has not alleged sufficient facts to show that such a business opportunity actually existed at the time of his

12

reliance on VariBlend's allegedly fraudulent invoices.  Rather, Brugger merely argues that such opportunities "would have" existed.  *Id.* ¶¶ 109, 113.

Brugger further argues that the facts alleged are "highly analogous" to those of *Kosowsky v. Willard Mountain, Inc.*, 90 A.D.3d 1127 (N.Y. App. Div. 2011), in which the Third Department affirmed the trial court's denial of the defendants' motion to dismiss the plaintiffs' fraud claim for a failure to plead damages.  In *Kosowsky*, the plaintiffs alleged that the defendants, who leased land from the plaintiffs and paid rent based on a percentage of their sales, falsified their annual income reports so that they paid less rent than they actually owed.  *Id.* at 1130.  The plaintiffs asserted a fraud claim, alleging that they had been induced to accept improperly low rent payments and thus were deprived of the opportunity to terminate the lease and seek other business opportunities.  *Id.*  While this fact pattern bears some similarity to this case, neither party in *Kosowsky* raised the issue of whether the damages alleged from this falsification were too speculative or unprovable; thus, *Kosowsky* merely stands for the proposition that lost business opportunities may provide a ground for damages stemming from a fraud claim.  But it does not relieve a plaintiff from the obligation to adequately plead damages, nor does it control here, where the lost business opportunities actually alleged by Brugger are too speculative to state a claim.

Thus, the Court finds that Brugger has not sufficiently pleaded damages stemming from lost business opportunities with Faber-Castell and with Seidel as a result of VariBlend's allegedly fraudulent behavior.  It may well be that Brugger was on the verge of agreement with either of those entities in 2010 before entering into the Agreement with VariBlend; however, even viewed in the light most favorable to him, Brugger's allegations regarding the availability of such opportunities between April 2014 and 2017 are too speculative.

### ii.      Lost Opportunity to Self-Produce

Besides alleging that he passed up on business opportunities with Faber-Castell and with Seidel in reliance on VariBlend's alleged misrepresentations, Brugger alleges that he also passed up the opportunity to "self-produce" these products in reliance on these same misrepresentations. Doc. 46 ¶ 116.  As a result, Brugger contends, he "lost the opportunity to generate greater revenue than he did under the License Agreement (with the falsified sales invoices)." *Id.* ¶ 117; *see also id.* ¶ 121.

However, aside from the lone conclusory allegation that he "had the opportunity" to self-produce his patented technology, Brugger has alleged no facts suggesting that he actually possessed such capability at the time of VariBlend's alleged misrepresentations, or asserting how this would plausibly be done.  *See World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007) (finding that plaintiff failed to allege facts showing that its alternative bidder had the "capacity to perform" under any such deal).  The Court is not persuaded by Brugger's argument that, since he is in the business of *designing* certain technology, it would be neither speculative nor implausible that he would be capable of *producing* and *selling* the products himself.[5]  Doc. 59 at 13–14.  Architects, for example, work to design buildings every day.  But they work with contractors to construct (or "produce") the buildings they design, and real estate agents to market (or "sell") the finished products.  The fact that an architect has designed a building does not make it any less speculative or implausible that that same architect could erect that building or find buyers for it on their own.

---

[5] Brugger cites cases such as *Doehla v. Wathne Ltd., Inc.*, No. 98 Civ. 6087 (CSH), 2000 WL 987280, at *6 in support of this proposition.  However, *Doehla* is distinguishable from the present case for the reasons discussed in the previous subsection.  Indeed, the alternative business opportunity in *Doehla* was far from speculative—the plaintiff alleged that he turned down an actual "lucrative" contract offer from his current employer at the time.  *Id.*

14

Beyond failing to plausibly allege that he would have been capable of producing and selling the technology himself, Brugger has also failed to sufficiently allege any facts, aside from conclusory allegations, showing that he would have generated *more revenue* through self-production than he did under the Agreement.  *See* Doc. 46 ¶¶ 116–21.  Thus, pursuant to the out-of-pocket rule, Brugger has not pleaded actual pecuniary losses in the form of lost opportunities to self-produce his patented technology as a consequence of VariBlend's alleged fraud.  *See Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996) (internal quotation and citation omitted); *Kregos v. Associated Press*, 3 F.3d 656, 665 (2d Cir. 1993).  The Court therefore dismisses Brugger's fraud counterclaim against VariBlend.

### B.    Brugger's Implied Duty of Good Faith and Fair Dealing Claim

Brugger also asserts that VariBlend breached its implied duty of good faith and fair dealing with respect to the Agreement.  Doc. 46 ¶¶ 123–35.  VariBlend argues the Court should dismiss this claim because:  (1) Brugger alleges the same underlying conduct and breached obligations in this claim as he does in his express breach of contract claims, and (2) Brugger's claim does not adequately allege damages.  The Court addresses these arguments in turn.

### i.    Duplicative Claims

New York law implies a covenant of good faith and fair dealing in every contract "pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (internal quotation marks and citation omitted).  Breach of this implied duty of good faith is "merely a breach of the underlying contract."  *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quotation marks and citation omitted).  Therefore, New York law "does not recognize a separate

cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Doyle v. Mastercard Int'l Inc.*, 700 F. App'x 22, 24 (2d Cir. 2017) (quoting *Harris*, 310 F.3d at 81).  In other words, when a claim for breach of the implied covenant of good faith and fair dealing is predicated on the same facts or damages as a claim for a breach of contract, the former must be dismissed as redundant.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n. 17 (2d Cir. 2011) ("Because L-7's claim for breach of the implied covenant of good faith and fair dealing . . . is based on the same facts as its claim for breach of contract, it should have been dismissed as redundant.").

Brugger alleges that VariBlend had an implied duty to be honest about its efforts to commercialize the Product.  Doc. 46 ¶ 128.  Brugger references Sections 2.4, 5.1, and 7 of the Agreement—which establish his duties to make minimum sales and use best efforts to commercialize the Products—in support of the existence of its duty to be forthright about these issues.  *Id.* ¶¶ 125–27.  He also argues that VariBlend breached this duty by falsifying sales and invoices.  *Id.* ¶¶ 131–33.  VariBlend argues that this claim is duplicative of two of Brugger's express breach of contract claims, which rest on VariBlend's alleged failure to pay minimum royalties and minimum sales (in violation of Sections 5.1 and 5.3 of the Agreement), and VariBlend's alleged failure to use best efforts to commercialize the Product (in violation of Sections 2.4 and 7 of the Agreement).  *Id.* ¶¶ 78–84.

In his opposition brief, Brugger has responded that the express breach of contract and the implied duty claims are based on distinct conduct.  Doc. 59 at 16.  Brugger reasons that, even if the Court found that VariBlend's sales and commercialization efforts were adequate and thus not a breach of the contract, VariBlend still failed to be forthright with Brugger about its sales and commercialization efforts, including through its falsification of invoices.  *Id.* at 16–17.  He

16

further states that the sections of the Agreement he references in Count III are cited only to show that this claim is consistent with the contract's terms. *Id*. at 18–19 (arguing that an implied duty must be consistent with the contract's terms).

To the extent that Brugger alleges that he has suffered damages from VariBlend's mere failure to *inform* him about its failure to commercialize the Product or meet minimum sales requirements, he fails to state a claim.  In such a situation, the "predicate conduct for the claims is the same, despite the attempt to emphasize different aspects of the conduct." *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 564 (S.D.N.Y. 2004) (dismissing the plaintiff's breach of implied covenant claims where the breach of contract claim was based on the alleged refusal to disburse funds as requested, and the breach of implied covenant claim was based on defendants' alleged failure to notify the plaintiff of such refusal); *see also W.S.A., Inc. v. ACA Corp.*, Nos. 94 Civ. 1868 (CSH), 94 Civ. 1493 (CSH), 1996 WL 551599, at *9 (S.D.N.Y. Sept. 27, 1996) ("The fact that [the plaintiff] has bifurcated its breach of contract claim, so as to place some of the allegations in support thereof in the category of 'breach of covenant of fair dealing,' does not grant it two separate causes of action").  Indeed, even viewing the facts in the light most favorable to Brugger, if there were no underlying breach of VariBlend's obligations under Sections 2.4, 5.1, and 7 of the Agreement, there would be no reason to inform Brugger of the failure to meet those requirements.

However, Count III also goes beyond alleging that VariBlend simply failed to inform Brugger that its efforts to commercialize the Products were inadequate.  Count III also alleges that VariBlend engaged in a separate invoice falsification scheme that violated VariBlend's implied duty of good faith.  Doc. 46 ¶ 133.  In other words, Brugger alleges that the same course of conduct providing the predicate for VariBlend's *fraud* claim also constituted a breach of

17

VariBlend's implied duty of good faith.  The Court has previously found, in the context of VariBlend's fraud claim, that this course of conduct was sufficiently separate from the underlying breach of contract allegations to merit its own analysis.  *See VariBlend I*, 2019 WL 4805771, at *21 ("[T]he fraud and contract claims should be considered separately.").  Thus, the Court will consider VariBlend's implied covenant of good faith claim to the extent he alleges that the fraudulent invoice scheme constitutes a breach of the implied covenant.

### ii.    Damages

However, even Brugger's allegations based on the alleged fraudulent invoice scheme cannot survive, as he has not sufficiently alleged damages resulting from this breach of duty.  A plaintiff alleging a breach of the implied covenant must still "allege actual ascertainable damages arising in connection with such claims, which [are] nonduplicative of the damages asserted in connection with its breach of contract claims."  *Able Energy, Inc. v. Marcum & Kliegman LLP*, 69 A.D.3d 443, 444 (N.Y. App. Div. 2010).  In his Amended Counterclaims, Brugger alleges that his injuries from the breach of the implied covenant include "diversion and loss of sales and market share, loss of access to retailers and customers, loss of ability to expand into new markets and distribution channels, injury to competition, reputational harm, loss of business opportunities and good will, among others" and "at least lost royalty payments and lost business opportunities."  Doc. 46 ¶ 134.

As discussed *supra* Section III.A., Brugger's allegations of lost business opportunities are too speculative to survive.  Brugger also does not sufficiently argue that he lost royalty payments as a result of the fraudulent invoice scheme.  Any damages stemming directly from past due minimum royalties would clearly be duplicative of Brugger's express breach claim.  *See Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 426 (N.Y. App. Div.

18

2010) (damages for breach of the implied covenant and express breach of contract cannot be identical).  In an attempt to distinguish the damages here from his express breach of contract claims, Brugger states that he "would have stood to gain" additional royalties, beyond past-due minimum royalty payments, were it not for the invoice falsification scheme.  Doc. 59 at 20. However, he does not explain why this would be so, except for the conclusory assertion that, had VariBlend been candid with him, "Brugger may well have been able to intervene and work to boost VariBlend's sales himself, thereby increasing the royalty payments he was due under the License Agreement so as to better realize the benefit of the bargain." *Id.* at 17.  In addition to being speculative, this theory is facially implausible:  Indeed, Brugger's theory elsewhere in his case is that, in such an event, he would have terminated the Agreement to pursue other business ventures. *See, e.g.*, Doc. 59 at 11.  Without more facts to support the inference that increased royalty payments would have issued if not for the invoice falsification scheme, Brugger has not met his burden to allege that any breach by VariBlend "*directly and proximately caused* [Brugger's] damages." *See Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (emphasis in original).

Brugger's remaining allegations of "loss of sales and market share, loss of access to retailers and customers, loss of ability to expand into new markets and distribution channels, injury to competition, reputational harm, and loss of good will" are also too conclusory to state a claim.  Brugger does not allege any facts showing that VariBlend's alleged invoice falsification scheme—as distinct from his express breach of contract claims—caused any financial losses that he has incurred. *See Presnall v. Analogic Corp.*, 17 Civ. 6662 (PKC), 2018 WL 4473337, at *11 (S.D.N.Y. Sept. 18, 2018) (a breach of implied duty claim cannot allege damages that are "intrinsically tied to the damages allegedly resulting from a breach of the contract.") (quoting *Art*

*Cap. Grp., LLC v. Carlyle Inv. Mgmt. LLC*, 151 A.D.3d 604, 605 (N.Y. App. Div. 2017)

(quotation marks omitted)).  Further, Brugger fails to address VariBlend's arguments regarding

these remaining damages, lending additional support to the conclusion that these damages are too

speculative to survive.  *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y.

2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to

respond to a defendant's arguments that the claim should be dismissed.").

Thus, the Court finds that Brugger has not adequately stated a claim for breach of the

implied covenant of good faith and fair dealing.

### C.      Brugger and Crystal's Declaratory Judgment Claims

VariBlend also moved to dismiss Brugger and Crystal's counterclaims seeking

declaratory judgments against VariBlend.  *See* Doc. 58 at 21–22.  VariBlend argues these

counterclaims are duplicative of claims brought by VariBlend through its initial complaint.  *Id.*

In their opposition brief, Brugger and Crystal have stated that they "agree to dismiss" these

counterclaims without prejudice, but "respectfully reserve the right to re-assert these claims later

if VariBlend attempts to unilaterally dismiss its breach claim against Brugger and/or its tortious

interference or unfair competition claims against Crystal."  Doc. 59 at 21.

The Court therefore grants the motion to dismiss Brugger and Crystal's declaratory

judgment counterclaims.

## IV.      CONCLUSION

For the foregoing reasons, VariBlend's motion to dismiss Counts II, III, and V of

Brugger's Amended Counterclaims, and all of Crystal's Amended Counterclaims, is

GRANTED.  The dismissals are with prejudice except for the declaratory judgment

counterclaims, which Brugger and Crystal may re-assert only in the event that VariBlend

unilaterally dismisses its breach claim against Brugger and/or its tortious interference or unfair competition claims against Crystal.  The next case management conference will be held on August 12, 2021 at 11:30am.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 56.

IT IS SO ORDERED.

Dated:    March 30, 2021
          New York, New York

_____
        Edgardo Ramos, U.S.D.J.