UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VARIBLEND DUAL DISPENSING SYSTEMS LLC,

Plaintiff,

-against-

CRYSTAL INTERNATIONAL (GROUP) INC., and
GERHARD BRUGGER,

Defendants.

---

CRYSTAL INTERNATIONAL (GROUP) INC., and
GERHARD BRUGGER,

Counterclaim-Plaintiffs,

-against-

VARIBLEND DUAL DISPENSING SYSTEMS LLC,
J. BURKE CAPITAL PARTNERS LLC, and JBCP-
24 LCC,

Counterclaim-Defendants.

---

**OPINION & ORDER**

18-cv-10758 (ER)

RAMOS, D.J.:

VariBlend Dual Dispensing Systems ("VariBlend") brought this action against Crystal International (Group) Inc. ("Crystal") and Gerhard Brugger in 2018.  Doc. 5 at 2. VariBlend alleged breach of contract against Brugger and tortious interference with contract and unfair competition against Crystal.  *Id.* at 3–4.  Brugger asserted counterclaims against VariBlend and additional parties J. Burke Capital Partners LLC ("J. Burke") and JBCP-24 LLC ("JBCP") (collectively, "Counterclaim-Defendants"). Following this Court's September 2019, decision granting in part and denying in part Counterclaim-Defendants' partial motion to dismiss, Brugger and Crystal each filed Amended Answers and Counterclaims on December 17, 2019 (the "Amended

Counterclaims"). Docs. 45, 46. Thereafter, VariBlend filed a motion to dismiss Counts II, III, and V of Brugger's Amended Counterclaims and Crystal's Counterclaims. Doc. 56. The Court granted that motion, *see* Doc. 76, and VariBlend subsequently filed an Amended Answer, Doc. 79.

Before the Court are: (1) Counterclaim-Defendants' motion for partial summary judgment, Doc. 110; (2) Crystal's motion for summary judgment, Doc. 121; (3) Brugger's motion for summary judgment, Doc. 117; (4) Brugger and Crystal's motion to strike VariBlend's supplemental expert report, Doc. 106; and (5) Brugger and Crystal's motion to preclude expert testimony and the corresponding expert report, Doc. 113. For the reasons stated below, the Court DENIES Counterclaim-Defendants' motion for partial summary judgment, Doc. 110, GRANTS Crystal's motion for summary judgment, Doc. 121, and GRANTS in part and DENIES in part Brugger's motion for summary judgment, Doc. 117. The Court further DENIES Brugger and Crystal's motion to preclude expert testimony and the corresponding expert report, Doc. 113, and GRANTS their motion to strike VariBlend's supplemental expert report, Doc. 106.

I.   **BACKGROUND**

   **A. Factual Background**

The facts underlying this action are discussed in detail in the Court's September 2019 Opinion and Order regarding Counterclaim-Defendants' partial motion to dismiss, *see VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Group) Inc.*, 18 Civ. 10758 (ER), 2019 WL 4805771 (S.D.N.Y. Sept. 30, 2019) ("*VariBlend I*"), and its March 2021 Opinion and Order granting VariBlend's motion to dismiss, *see VariBlend Dual Dispensing Sys. LLC v. Crystal Int'l (Group) Inc.*, 18 Civ. 10758 (ER), 2021 WL 119834 (S.D.N.Y. Mar. 30, 2021) ("*VariBlend II*"). The Court discusses only the facts relevant to the resolution of the motions now before it.

Brugger is an inventor with experience designing dispensers for beauty products. Doc. 5-2 at 3–4.  VariBlend[1] manufactures dispensers for the cosmetics, food, and pharmaceutical industries.  *Id.* at 2.

In April 2010, Brugger entered into a licensing agreement with VariBlend and JBCP for "variable-flow disc technology" (the "Agreement").  *See* Doc. 26-2.  The technology allows cosmetic liquids to be pumped out of multiple dispenser compartments in varying proportions and flows.  *See* Doc. 46 at 12.  As part of the Agreement, Brugger granted VariBlend an exclusive right to license, manufacture, distribute or develop a "Dispenser (together with any Improvements)," as those terms were defined in the Agreement.[2]  Doc. 26-2 at 5.  "Dispenser," as defined, included the patented variable-flow disc technology.  Doc. 26-2 at 3.  In exchange for the rights granted to it in the Agreement, VariBlend agreed to certain royalty and minimum sales obligations, among other duties.[3]  Doc. 26-2 at 8–10.

As relevant here, Section 10 of the Agreement, titled "Confidentiality," provided that "[e]ach of the parties and their Affiliates shall return to the others all Protected Information," defining "Protected Information" as "any proprietary or confidential information."  Doc. 26-2 at 12.  And in Section 14, titled "Effect of Expiration or Termination," the Agreement further specified that upon breach or expiration, VariBlend

---

[1] Plaintiff VariBlend Dual Dispensing Systems LLC is the subsidiary of VariBlend Holdings LLC.  Doc. 140-3 at 6.  VariBlend Holdings LLC has an additional subsidiary, Spectra Development Partners LLC ("Spectra").  *Id.* at 7.  While Spectra does not appear within the Agreement, *see generally* Doc. 26-2, the parties agree that the pump production equipment at issue in this case was owned by Spectra, not VariBlend, *see* Docs. 139 at 13, 118 at 21.  Nevertheless, VariBlend emphasizes that it exclusively used the assets and managed their sale.  Doc. 139 at 13.  It adds that "[w]hatever the arrangement between VariBlend and Spectra, the record supports the contention that funds from the sale of those assets would go to VariBlend."  *Id.*

[2] The Agreement provided VariBlend with rights to the technology corresponding with Patent PCT/DE 99/02568, also known as US 6,464,107B1, which the parties refer to as the "Mother Patent," *see, e.g.*, Doc. 134 at 5, in several pleadings.  Doc. 5-2 at 4; *see also* Doc. 26-2 at 3.  It also provided VariBlend with rights corresponding with the following patents:  DE 103 00 242.1; PCT/EP 03/00197; PCT/EP 03/00235; and DE 202 18 244.4.  Doc. 26-2 at 3.

[3] JBCP guaranteed VariBlend's future royalty payments to Brugger.  Doc. 26-2 at 9.

would lose its ability to "exercise the rights licensed." *Id.* at 14–15.  It also stated that

"[o]n termination or expiration of this Agreement, [VariBlend] shall immediately stop the

manufacture, sale and distribution of all Products and shall send [Brugger] a complete

inventory report and accounting . . . ." *Id.* at 14.

Approximately a year and a half after VariBlend and Brugger entered into their

Agreement, Crystal, a competing dual pump manufacturer, entered into a separate series

of licensing agreements with Werner Holzmann ("Crystal-Holzmann Agreements").

Doc. 122 at 9.  Holzmann is Brugger's cousin.  Doc. 5-2 at 5.  The Crystal-Holzmann

Agreements—which were entered into starting at the end of 2011—provided Crystal with

the rights to technologies patented by both Holzmann *and* Brugger, and they explicitly

guaranteed that the licensor (Holzmann) had the capacity to grant those rights.  Doc. 122

at 7; Doc. 123-5 at 2–4; Doc. 123-6 at 2–4; Doc. 123-7 at 2–4.  In regard to Brugger's

patents,[4] the Crystal-Holzmann Agreements provided that "[Holzmann] is entitled to

grant sub-licenses to [Crystal] regarding the [listed] parents and patent applications."

Docs. 123-5 at 2; 123-6 at 2; 123-7 at 2.

Critical to the motions now before the Court, the parties dispute whether Crystal

knew about the nature and terms of the VariBlend-Brugger Agreement at the time that the

Crystal-Holzmann Agreements were drafted and took effect.  *Compare* Doc. 122 at 9

*with* Doc. 137 at 5–17.  Crystal maintains that it did not know about the terms of the

Agreement, and, to the extent that Crystal *did* know that both it and VariBlend

maintained working relationships with Brugger and Holzmann, it assumed that such work

was proper and did not affect any existing agreement.  Doc. 122 at 7–9; *id.* at 22 (noting

that, "[i]n a communication between VariBlend's then-CEO, Robert Brands, and

Crystal's CEO, Roger Hwang, Mr. Hwang commented that Crystal is 'also licensed by

---

[4] The agreements provided that Holzmann had the capacity to, and did, sub-license the rights to four of
Brugger's German patents:  (1) 1.5 DE 202005006547.1, Doc. 123-5 at 2; (2) 1.2 DE 202011102452.4,
"One Pump Dual Dispenser," Doc. 123-6 at 2; (3) 1.3 DE 202012004644.6, "Spray Actuator," *id.*; and (4)
1.5 DE 202005006547.1, "Applicator 1," Doc. 123-7 at 2; *see also* Doc. 133-1 at 8–14.

the Germans' (i.e., Mr. Holzmann and Mr. Brugger), to which Mr. Brands responded: 'Hope we both succeed.").  VariBlend counters that over the course of various years, several Crystal employees engaged in communications with Brugger that demonstrate its knowledge and intent.  *See generally* Doc. 137 at 5–19.  It references emails, meetings, and other communications wherein Crystal CEO Hwang, Diane Yoder, Crystal's Director of Business Development, and other employees discussed technical components of its technology with Brugger, despite allegedly knowing about the VariBlend-Brugger agreement.  *See id.*

Nevertheless, the parties agree that in approximately March 2018, VariBlend ceased making royalty payments to Brugger under the VariBlend-Brugger Agreement, allegedly due to VariBlend's insolvency.  Doc. 5-2 at 8; *see also* Doc. 118 at 9 (stating that VariBlend claimed it was insolvent when it stopped making royalty payments).  The parties diverge as to what happened next.  According to VariBlend, Brugger immediately (and improperly) began working with Crystal, contacting "virtually all" of VariBlend's customers and prospective customers through a "Customer Letter" that Hwang and Brugger co-signed on April 2, 2018.  Doc. 5-2 at 8.  VariBlend contends that Crystal and Brugger impermissibly told those customers that:  (1) VariBlend could no longer manufacture various types of dual dispensers; (2) Brugger held the patents for the technology underlying the dispensers; and (3) VariBlend breached a licensing agreement, meaning that Brugger was now entitled to all the rights to the production and distribution of the dispensers.  *Id.*  According to Brugger and Crystal, these alleged actions were not improper because VariBlend's material breach meant that it lost its license to Brugger's intellectual property.  *See* Doc. 118 at 9–10.

After the VariBlend-Brugger agreement broke down, both parties alleged several material breaches of the contract, as well as related state law claims.  *See VariBlend II,* Doc. 76 at 3.  While Crystal was not a party to VariBlend and Brugger's Agreement, VariBlend alleges that it played a key role in its breakdown.  *See generally* Doc. 5-2.  In

short, VariBlend contends that Crystal conspired with Brugger and his cousin, Holzmann, to circumvent VariBlend's rights to Brugger's technology and improperly profit from that conspiracy.  *Id.* at 5–8.

### B.  Procedural Background

VariBlend first filed an action against Brugger and Crystal in New York Supreme Court on May 15, 2018.  Doc. 1 at 2.   The complaint alleged that Brugger circumvented his obligations under the Agreement by developing similar pump technologies with Holzmann and patenting them in Holzmann's name.  *See* Doc. 1 at 3–4; Doc. 1-2, at ¶ 16. VariBlend asserted that these patents are covered by the Agreement, either as Dispensers, Improvements, or "adjustable mixing ratio" dispensers.  Doc. 1-2 at 5.  VariBlend further alleged that Brugger conspired with Crystal to secure these patents, "with the ultimate goal of having Crystal produce products containing the Licensed Technology" from which Brugger and Crystal would benefit.  Doc. 1-2 at 6.

Brugger answered on November 16, 2018.  Doc. 1-3.  He denied VariBlend's claims, alleged several counterclaims, and added J. Burke and JBCP ("the JBCP parties") as Counterclaim-Defendants.  *See id.* at 11–38.  Brugger also removed the case to this Court on November 16, 2018.  Docs. 1 at 1–10, 4 at 1–2.

In January 2019, VariBlend filed a motion to remand the case to state court and to dismiss Brugger's declaratory judgment counterclaim action under Rule 12(b)(1).[5]  *See* Docs. 19, 20.  Soon thereafter, Counterclaim-Defendants together filed a joint partial motion to dismiss Brugger's counterclaims for breach of contract, fraud, and tortious interference under Federal Rule of Civil Procedure 12(b)(6).  Docs. 25–27.  In an Opinion and Order dated September 30, 2019, the Court (1) denied VariBlend's motion to remand the action, (2) dismissed Brugger's declaratory judgment action for lack of jurisdiction, and (3) granted without prejudice Counterclaim-Defendants' partial motion

---

[5] The Motion to Dismiss was filed on behalf of all Counterclaim-Defendants.  Doc. 25 at 1–2.

to dismiss Brugger's counterclaims for breach of contract, fraud, and tortious interference as to the JBCP parties. *VariBlend I*, Doc. 37. The Court, however, denied the motion to dismiss Brugger's breach of contract counterclaim as to VariBlend. *Id.*

Brugger and Crystal then filed Amended Answers and Counterclaims in December 2019. Docs. 45, 46. Brugger brought five Counterclaims. Doc. 46 at 22–36. As is relevant here, Brugger alleged in Count I(D) that VariBlend breached the Agreement by failing to return proprietary information. Doc. 46 at 27–28. VariBlend subsequently filed a motion to dismiss the following in March 2020: (1) Counts II, III, and V of Brugger's Amended Counterclaims and (2) both of Crystal's Counterclaims. Docs. 56, 57, 58; *see also* Docs. 45 at 9–13, 46 at 22–36. In March 2021, the Court granted VariBlend's motion, dismissing Counts II, III, and V of Brugger's Amended Counterclaims and both of Crystal's Amended Counterclaims.[6] *VariBlend II*, Doc. 76.

In May 2021, VariBlend filed an Amended Answer to Brugger's two remaining Counterclaims. Doc. 79; *see also* Doc. 46 at 22–36. The parties proceeded to discovery,[7] and in January 2022, asked the Court to refer the matter to the Court's Mediation Panel.[8] Docs. 81–100. The Court referred the case, Doc. 101; however, in February 2022, the Mediator informed the Court that mediation was unsuccessful, Doc. 103. Thereafter, between March and April 2022, the parties filed the motions now before the Court. Docs. 106, 110, 113, 117, 121.

---

[6] Accordingly, only Counts I and IV of Brugger's Counterclaims remained as of March 2021.

[7] The parties produced various expert reports during discovery. Docs. 133-1 (Walters Original Report), 133-2 (Excerpts of Glenn Responsive Report), 133-4 (Walters Supplemental Report). The reports contain explanations regarding the facts reviewed and methods used to arrive at the various expert opinions. *See, e.g.*, Doc. 133-1 at 1–2, 4–23. As relevant here, the expert reports provided opinions regarding whether, as VariBlend contends, the technologies outlined within various patents at issue constituted "Improvements" pursuant to the Agreement. *See generally* Docs. 133-1, 133-4. In his original report, VariBlend's expert, Mr. Pete Walters, indicated that eight patents constitute "Improvements" under the Agreement. *See* Doc. 133-1. Notably, Walters added an additional patent (U.S. 9,346,069B2) as an "Improvement" in his supplemental report. Doc. 133-4 at 1–3.

[8] As is relevant here, the Court extended discovery deadlines on numerous occasions. *See, e.g.*, Docs. 64, 66, 74, 86, 88, 90.

On September 28, 2022, as is relevant to Counterclaim-Defendants' motion for partial summary judgment, *see* Docs. 110–112, the parties jointly stipulated to the voluntary dismissal of Count IV of Brugger's Counterclaims, which alleged unfair competition.[9]  *See* Docs. 146–47.

## II.   DISCUSSION

Before the Court are three motions for summary judgment—one filed by Counterclaim-Defendants VariBlend, J. Burke, and JBCP-24; one filed by Brugger; and one filed by Crystal—and two evidentiary motions filed by Brugger and Crystal.  *See* Docs. 106, 110, 113, 117, 121.  The Court first addresses the parties' motions for summary judgment.

### A.  Summary Judgment Standard

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.*

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in

---

[9] Accordingly, only Count I of Brugger's Counterclaims remains at this stage.

order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal citation and quotation marks omitted).  In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir.2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To prevail, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57, (1986)).

"[S]ummary judgment should only be granted '[i]f after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)).

"When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, 'in each case construing the evidence in the light most favorable to the non-moving party.'" *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.") (citation omitted).  The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment. *Morales*, 249 F.3d at 121.

### B.  Counterclaim-Defendants' Motion for Partial Summary Judgment

Counterclaim-Defendants VariBlend, J. Burke, and JBCP moved for summary judgment as to Count I(D) of Brugger's Amended Counterclaims.[10]  Docs. 110, 112 at 4; *see also* Doc. 46 at 27–28.  Count I(D) alleges that VariBlend breached the Agreement through its alleged failure to return or destroy protected information, namely, the equipment used to manufacture Brugger's proprietary dispensers, including molds and assembly machines.  Doc. 46 at 27–28.

In their motion, Counterclaim-Defendants argue that the Agreement contains no term indicating that VariBlend "was obligated to transfer to Brugger all molds and equipment that happen to contain the supposed Protected Information."  Doc. 112 at 10. They contend that the Agreement is not ambiguous on that matter because "[h]ad the parties intended to include such an obligation in the License Agreement, they could have done so."  *Id.* at 10–11.  In response, Brugger argues that the Agreement makes clear that proprietary information must be returned at its termination, and there are genuine disputes of material fact as to whether the "assembly equipment at issue here *embodies* such proprietary information."  Doc. 129 at 5 (emphasis added).

Because the Court finds that genuine disputes of material fact remain as to this issue, Counterclaim Defendants' motion for summary judgment as to Count I(D) is denied.  *See Celotex Corp.*, 477 U.S. at 323.  As described above, the Agreement specifies that upon its expiration or termination, VariBlend would lose its ability to "exercise the rights licensed," Doc. 26-2 at 15, and that, "[o]n termination or expiration . . . , [VariBlend] shall immediately stop the manufacture, sale and distribution of all Products and shall send [Brugger] a complete inventory report and accounting . . . ," Doc. 26-2 at 14.  Notably, the agreement explicitly stated that each of

---

[10] As described above, Counterclaim-Defendants also moved for summary judgment as to Count IV of Brugger's Amended Counterclaims.  Doc. 112 at 4, 8; *see also* Doc. 46 at 35–36.  However, the parties subsequently stipulated to the voluntary dismissal of Count IV.  Docs. 146, 47.

the parties would return "all Protected Information," defining "Protected Information" broadly as "any proprietary or confidential information." *Id.* at 12.

Taking these phrases together, a reasonable jury could indeed find that the molds and equipment used to make Brugger's dispensers should have been returned. *See Senno*, 812 F. Supp. at 467. The record contains ample evidence that a jury could rely upon in order to come to that conclusion. For example, in a sworn declaration, Brugger indicated that the equipment used "for the purposes of plastic injection molding," also known as "Assembly Equipment," necessarily "embodies" the Protected Information. Doc. 129-2 at 4. That is because, as Brugger describes, the equipment "permits the manufacture of products that practice Brugger's Patent No. 7,240,808 (the '808 Patent)." Doc. 129 at 6. In other words, Brugger stated that the molds at issue are protected because they contain, and can produce, patented information. In support of that contention, Brugger cites two cases wherein courts found that "physical embodiments" of patents could fall into the category of information that had to be returned to their owners. *Id.* at 7 (citing *PLC Trenching Co., LLC v. Newton*, No. 11 Civ. 515 (GTS), 2012 WL 760744, at *2 (N.D.N.Y. Mar. 7, 20212); *Doctor's Assocs., Inc. v. Kaur*, No. 19 Civ. 1148 (JCH), 2019 WL 7290950, at *4 (D. Conn. Oct. 29, 2019)). Furthermore, as Brugger notes, "[t]o the extent the contract is not clear on its face that Section 10 encompasses manufacturing equipment, the ambiguity must be resolved as a factual matter." Doc. 129 at 7.

In their reply, Counterclaim-Defendants contend that Brugger failed to raise a triable issue because the relevant section of the Agreement, Section 10, "does not address equipment," or the "'embodiment' concept that Brugger articulates in his Opposition papers." Doc. 142 at 5. However, while the Agreement does not explicitly state that the equipment at issue constituted protected information to be returned upon its termination, the record contains sufficient information, construing the facts in the light most favorable to Brugger, for a jury to find in his favor. *See Brod*, 653 F.3d at 164. Accordingly, summary judgment cannot be granted as to Count I(D) at this stage of the proceedings.

Doc. 46 at 27–28.  Indeed, "the evidence presents a sufficient disagreement to require submission to a jury" because this question is not "so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251–52.

### C.  Crystal's Motion for Summary Judgment

In its motion, Crystal moves for summary judgment as to VariBlend's tortious interference and unfair competition claims.  Doc. 122 at 7, 18–31; *see also* Doc. 5-2 at 12–16.

#### i.  Tortious Interference Claim

Under New York law, the elements of tortious interference are "(1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'"  *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)).

Crystal argues that VariBlend cannot demonstrate two necessary elements of its tortious interference claim:  (1) that Crystal knew about the existence of a contract between VariBlend and Brugger, and (2) that Crystal intentionally procured Brugger's alleged breach of the contract.  Doc. 122 at 10–11 (citing *Kirch*, 449 F.3d at 401–02).  It emphasizes that while it may have been aware that an agreement existed, the record contains no evidence that Crystal knew about the terms of any such agreement.  *See id.* at 7, 10–20.  In response, VariBlend contends that Crystal did have the requisite knowledge and intent because several of its employees, including Hwang and Diane Yoder, allegedly knew that Brugger was responsible for the technology "underlying VariBlend's dispensers."  Doc. 137 at 18–19.  VariBlend emphasizes several instances wherein Hwang, Yoder, and other Crystal employees met with, communicated with, and engaged

in conversations with Brugger about the technology.  *Id.* at 11–15, 19.  According to VariBlend, those conversations are sufficient to show that Crystal knew that Brugger was responsible for the technology licensed by Crystal pursuant to the Agreement.  *Id.* at 19.

The Court disagrees with VariBlend's contentions.  A reasonable factfinder could not conclude that Crystal knew about the terms of Brugger's contract with VariBlend, nor that it intended to procure Brugger's breach.  First, none of the documents that VariBlend relies on say or suggest that Crystal knew about the Agreement—or any of the terms of the Agreement—at issue in this case.  *See*  Doc. 137 at 11–17.  As Crystal notes more concretely, "VariBlend does not rebut that Mr. Hwang, Crystal's CEO who authorized Crystal's work with Mr. Brugger, did not know:  (1) any terms of [the Agreement]; (2) whether the License Agreement was exclusive; (3) the intellectual property rights the License Agreement concerned; or (4) the License Agreement's payment structure."  Doc. 143 at 5.  And under New York law, it is insufficient that Hwang knew that Brugger worked with VariBlend to some degree, particularly where Hwang had reason to believe that any agreement between Brugger and Crystal was not exclusive.  *Taboola, Inc. v. Ezoic Inc.*, 17 Civ. 9909 (PAE), 2021 WL 2041639, at *9 (S.D.N.Y. May 21, 2021); Doc. 122 at 22 (noting that the former CEO of VariBlend acknowledged that both VariBlend and Crystal worked with Brugger and Holzman and stated that he hoped they would both succeed).

VariBlend resorts to various forms of anecdotal evidence in its attempt to show that there is a genuine issue of material fact as to Crystal's knowledge and intent.  *See* Doc. 137 at 11–17.  For example, it cites Hwang's deposition wherein he stated that he knew that VariBlend produced "the same" product that Versadial, Brugger's former employer, previously made.  Doc. 137 at 11.  VariBlend also cites to an email wherein Yoder stated that she wanted Crystal to produce some of the same types of dispensers that VariBlend produced.  *Id.*  At most, these statements show that Crystal associated VariBlend's dispensers with some of Brugger's former employer's products, and that

Crystal sought to produce similar dispensers. *See generally id.*  But they fail to shed light on Crystal's knowledge about the terms of the Agreement at issue here, or Crystal's intentional procurement of its breach.  *See* Doc. 122 at 10–11; *see also Kirch*, 449 F.3d at 401.

VariBlend then goes on to say that "[t]here is no way that Crystal, an industry competitor, would have been unaware of the VariBlend-Brugger connection."  *Id.* at 12.  It leads that argument by citing Yoder's deposition, wherein she stated that she believed that VariBlend was licensing technology from Brugger because "[t]hey were marketing it, so they would have had to . . . ."  Doc. 136-1 at 12.

To be clear, the market's general awareness about a supposed "VariBlend-Brugger connection" is insufficient to prove that Crystal knew about the Agreement at issue here.  *See Kirch*, 449 F.3d at 401.  Nor is it sufficient that Yoder assumed that such an agreement *may* exist because of her observation that VariBlend was allegedly marketing Brugger's technology.  *See id.*; *see also* Doc. 136-1 at 12.  Indeed, the fact that one employee made an assumption about the "VariBlend-Brugger connection" does not show that Crystal itself knew about the existence and terms of the agreement.  *See Kirch*, 449 F.3d at 401; *see also Taboola, Inc.*, 2021 WL 2041639, at *9.

To be sure, VariBlend references various communications that shed light upon various assumptions that Crystal employees may have made about the so-called "VariBlend-Brugger connection."  Doc. 137 at 11–17.  VariBlend also references various documents wherein Crystal employees contacted Brugger, instead of Holzmann, about the technology that it was developing pursuant to the Holzmann patents.  *See* Doc. 137 at 13–16.  But no reasonable factfinder could conclude that those communications are sufficient for VariBlend to meet its burden under New York's tortious interference law to establish Crystal's knowledge.  That is because VariBlend must show that Crystal "had actual knowledge of the terms of the contract and of the contractual obligation that was

allegedly breached." *Taboola, Inc.*, 2021 WL 2041639, at \*9 (internal quotations and citation omitted).

Moreover, VariBlend is incorrect in its contention that "[o]nce a jury finds that Crystal knew that Brugger developed technology originally attributed to Holzmann, it is logical for the jury to find that Crystal also knew that Brugger was breaching his obligations under his agreement with VariBlend." Doc. 137 at 19. For the reasons stated above, such a conclusion rests upon a string of assumptions that the evidence fails to substantiate. Moreover, that VariBlend believes that "[t]he only credible reason for Brugger putting his own technology under Holzmann's name is that he was seeking to evade detection by VariBlend" does not mean that a jury would—or could—come to the same conclusion based on the record. *Id.* The record strongly calls into question that Brugger "[put] his own technology under Holzmann's name" in order to hide his involvement with the patents. *Id.*; *see also* Doc. 122 at 17. It also contains no evidence to support the contention that Crystal knew that Brugger was breaching his obligations to VariBlend. Indeed, the record shows that all of the Crystal employees who were deposed either stated that they did not know the terms of an agreement or were unaware that one existed at all. *See, e.g.*, Doc. 136-1 at 12–13; Doc. 122 at 13. And as Crystal points out, Hwang, who was ultimately responsible for the licensing agreements that provided Crystal with rights to Brugger's technology, testified that he did not know about the Agreement or its terms. Doc. 122 at 13.

VariBlend also fails to show that there are genuine disputes of material fact as to Crystal's knowledge and "intentional procurement" of Brugger's alleged breach. *See Kirch*, 449 F.3d at 401. VariBlend can neither show that Crystal knew about the relevant terms of the Agreement, nor that it engaged in the alleged behaviors with the objective of procuring a breach of those terms. *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327–28 (S.D.N.Y. 2017); *see also* Doc. 122 at 16–17. Accordingly, Crystal's motion is granted as to VariBlend's tortious interference claim.

### ii. Unfair Competition Claim

"The essence of an unfair competition claim under New York law is that the defendant misappropriated the fruit of plaintiff's labors and expenditures by obtaining access to plaintiff's business idea either through fraud or deception, or an abuse of a fiduciary or confidential relationship." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). A claim for unfair competition by misappropriation can be broken down into two elements. VariBlend must show that Crystal "(1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Sidney Frank Importing Co., Inc. v. Beam Inc.*, 998 F. Supp. 2d 103, 209 (2007) (internal quotation marks and citation omitted).

Crystal argues that VariBlend can neither show that Crystal misappropriated VariBlend's intellectual property, nor that it acted in bad faith. Doc. 122 at 21, 22–30. The Court agrees and grants Crystal's motion as to VariBlend's unfair competition claim. As established above, the record fails to show that Crystal knew about the nature of the license between Brugger and VariBlend. VariBlend thus faces a difficult obstacle in its attempt to show that genuine disputes remain as to whether Crystal "displayed some element of bad faith" in its purported misappropriation of the technology that Brugger licensed to VariBlend. *See Sidney Frank Importing Co., Inc.*, 998 F. Supp. at 209; *see also* Doc. 122 at 21.

The bad faith element of VariBlend's unfair competition claim requires that it prove that Crystal acted with a dishonest purpose. *See Turner v. Temptu Inc.*, No. 11 Civ. 4144 (JMF), 2013 WL 4083234, at *12 (S.D.N.Y. Aug. 13, 2013). Additionally, a finding of bad faith cannot be made where the alleged misconduct represents nothing more than a defendant's exercise of its legal rights. *Id.*

The evidence produced during discovery supports Crystal's argument that there are no genuine disputes of material fact as to this claim in light of the applicable standard. Indeed, Crystal entered into licensing agreements that granted it rights to use and sell

products arising from *both* Holzmann and Brugger's patents.  *See* Doc. 123-4 at 3.  The agreements explicitly provided that Holzmann had the capacity to grant them.  *Id.* at 4; Doc. 123-5 at 4; Doc. 123-6 at 4; Doc. 123-7 at 4.  Contrary to VariBlend's argument, a reasonable factfinder could not find that "Crystal acted in bad faith when working with Brugger to deprive its competitor VariBlend of the contractual rights for which VariBlend bargained and was paying."  Doc. 137 at 22.  There is no record evidence upon which a factfinder could rely to come to that conclusion.  Tellingly, VariBlend provides no citation to support that contention.  *See id.*  Accordingly, Crystal's motion is granted as to VariBlend's unfair competition claim as well.[11]  Crystal is therefore dismissed from this case.

### D.  Brugger's Motion for Summary Judgment

The Court next considers Brugger's motion for summary judgment as to VariBlend's breach of contract claim.  Docs. 117, 118; *see also* Doc. 5-2 at 10–12.  Brugger moves for summary judgment as to VariBlend's three damages theories underlying that claim, namely:  its demand for (1) $4.9 million in return of royalties, (2) $3 million in lost asset value, and (3) $4 million in lost profits.  Doc. 5-2 at 11–12.  In response, VariBlend argues that "Brugger's Motion does not challenge the merits of VariBlend's claims against him," rather, "Brugger attacks VariBlend's theories of damages."  Doc. 139 at 4.  VariBlend adds that there are indeed genuine disputes of material fact as to its damages theories.  *Id.* at 7–14.

Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages.  *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011) (internal quotation marks omitted).  Accordingly, a party's failure to prove damages is fatal to a breach of contract action.  *LNC Investments, Inc. v. First Fidelity Bank, N.A.*

---

[11] Because it finds that there is no triable dispute of fact as to the bad faith element, the Court will not address the parties' arguments as to the misappropriation element.

*New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999). Because the Court finds that there are genuine disputes of fact as to one of VariBlend's underlying damages theories, VariBlend's breach of contract claim must survive summary judgment. However, for the reasons stated below, VariBlend may not pursue its claim for $3 million in damages under a lost asset value theory, or its claim for $4 million in damages under a lost profits theory.

### i.  Return of Royalties Theory

In regard to VariBlend's demand for $4.9 million in return of royalties, the parties agree that a claim for return of royalties is a form of restitution damages, which are reduced by the value of any counter-performance received by the non-breaching party. Doc. 118 at 13; Doc. 139 at 7; *Bauch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992). Counter-performance is the benefit, if any, provided by the breaching defendant pursuant to the terms of the agreement; accordingly, restitution damages are offset by the value of a defendant's counter-performance where the breaching defendant partially performed under the terms of the agreement. *See Bressler*, 977 F.2d at 729–30. The parties dispute the value of Brugger's performance here: while Brugger contends that VariBlend "reported *over $40 million in revenue* in sales of products incorporating the licensed technology," Doc. 118 at 14 (emphasis in original), VariBlend counters that there is no basis for that figure, which, if anything, is actually much lower than $40 million, Doc. 139 at 8–9.

Here, the record does not establish that, as a matter of law, Brugger's contention about the value of his alleged counter-performance is correct. In other words, Brugger has failed to show that there are no genuine factual disputes as to the value of two key items: (1) VariBlend's purported lost royalties and (2) Brugger's alleged counter-performance. As VariBlend notes, a reasonable jury could "reject Brugger's contention that the value of his purported performance was $40 million" on various bases, including the notion that VariBlend "earned revenue in spite of Brugger's actions, and not because

of Brugger." Doc. 139 at 7, 10 (emphasis omitted); *Bausch*, 977 F.2d 720, 730 (2d Cir. 1992) (noting that a breach of exclusive rights can "diminish the value of the benefit" received). And Brugger "does not even offer any basis for the $40 million 'reasonable value' he claims to have bestowed on VariBlend." Doc. 139 at 8; *see also* Doc. 118 at 14 (attributing the entirety of VariBlend's "reported revenue in sales of products" to Brugger without providing a basis for that attribution). Depending on the value that a jury assigns to Brugger's purported counter-performance, it is possible for that jury to find that VariBlend is indeed entitled to some damages representing lost royalties due to Brugger's alleged breach.

Critically, the question before the Court is not whether VariBlend has proven its breach of contract claim as a matter of law, nor whether a damages award under this theory should indeed be awarded. That is because Brugger, not VariBlend, moved for summary judgment as to VariBlend's breach of contract claim. Accordingly, because the Court must only decide whether, construing all facts in VariBlend's favor, the record contains sufficient evidence for a reasonable jury to find that Brugger breached the Agreement and a return-of-royalties damages theory is not foreclosed, Brugger's motion is denied as to this theory. *Senno*, 812 F. Supp. 2d at 467–68.

### ii.  Lost Asset Value Theory

Regarding VariBlend's demand for $3 million in lost asset value, Brugger contends that, as a matter of law, VariBlend cannot demonstrate that it is owed the damages allegedly caused by Brugger's breach. Doc. 118 at 15.

In order to succeed under this theory, VariBlend must both (1) demonstrate with certainty that the lost asset value was caused by the breach and (2) establish that the damages were fairly within the contemplation of the parties at the time they entered into the Agreement. Doc 118 at 15–16; *Kenford Co. v. Cty. Of Erie*, 67 N.Y.2d 357, 261

(1986); *see also Nina Indus., Ltd. v. Target Corp.*, No 04 Civ. 2540 (JSR), 2005 WL

323745, at *2 (S.D.N.Y. Feb. 8, 2005).

> VariBlend provides the following theory regarding lost asset value:

>> Under its license agreement, VariBlend paid for and had exclusive
>> access to adjustable dual dispensing technology that produced the
>> VariBlend Dispensers.  However, during the term [o]f the VariBlend
>> License agreement, Brugger and Crystal developed next generation,
>> improved adjustable dual dispensers that were identical in size and
>> nearly identical in name and appearance to the VariBlend Dispensers.
>> As such, VariBlend went from being the exclusive provider of these
>> dispensers and making investments based on that belief, to having a
>> competitor offering an identical replaceable product with improved
>> robustness and function.

Doc. 139 at 11.  To support that theory, it points to various record documents that,

according to VariBlend, provide information as to the equipment at issue, its value, and

details that would allow a jury to compare it to the dispensers produced by Crystal.  *See

id.* at 11–12.  VariBlend also underscores Section 2.1 of the Agreement, wherein Brugger

provided VariBlend exclusive rights to his technology.  *Id.* at 12.

Critically, and fatally for VariBlend, however, VariBlend did not, and does not,

own the assets at issue.  Doc. 139 at 13; *see also* Doc. 118 at 21; Doc. 145 at 10.

VariBlend concedes this point.  Doc. 139 at 13.  It merely responds by noting that (1) the

owner of the assets, Spectra, is a subsidiary of the same corporate parent as VariBlend,

and (2) VariBlend "used" the assets.  Doc. 139 at 13.  But "[i]t is black-letter law that one

corporation cannot assert an affiliate's legal rights."  *Clarex Ltd. v. Natixis Securities

America LLC*, No. 12 Civ. 722 (PAE), 2012 WL 4849146, at *6 (S.D.N.Y. Oct. 12, 2012)

(citing *Hudson Optical Corp. v. Cabot Safety Corp.,* No. 97-9046, 1998 WL 642471, at

*3 (2d Cir. Mar. 25, 1998) (summary order) (concluding that a subsidiary is a "separate

corporation" from the parent company)).  Accordingly, as a matter of law, VariBlend

lacks standing to assert these claims because the legal rights at issue belong to Spectra,

not VariBlend.  *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.*, 861 F. Supp. 179, 181

(E.D.N.Y. 1994) ("A corporation does not have standing to assert claims belonging to a

related corporation, simply because their business is intertwined.") (citation omitted); *see also BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 420 (S.D.N.Y. 2011).[12]  Summary judgment is thus appropriate as to this damages theory.

### iii.  Lost Profits Theory

According to Brugger, VariBlend's lost profits theory fails for several reasons: "VariBlend has provided no evidence or analysis—through interrogatory responses, Rule 26 disclosures (which were not served), or otherwise," to support its claim, Doc. 118 at 21–22; the claim is too speculative, *id.* at 22; and recovery for lost profits was not contemplated by the parties when they entered into the agreement, *id.* at 26.

The Court agrees that this theory is insufficiently supported and too speculative to survive summary judgment.  Under New York law, recovery for loss of profits is permitted where a plaintiff demonstrates with certainty that such damages were caused by the alleged breach, and the purported loss is capable of proof with reasonable certainty. *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996) (citing *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261 (1986) (*per curiam*)).  "In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of intervening causes."  *Kenford Co.*, 67 N.Y.2d at 261.  Accordingly, VariBlend had to show that genuine disputes remain as to the relationship between the alleged breach and the purported loss and the degree of certainty to which the alleged loss is capable of proof.

Here, as Brugger, notes, VariBlend "concedes that it has not identified, in its complaint or elsewhere, a single specific sales prospect that was harmed by not having

---

[12] VariBlend further notes that, "[w]hatever the arrangement between VariBlend and Spectra, the record supports the contention that funds from the sale of those assets would go to VariBlend."  Doc. 139 at 13. While that contention may be true, it does not resolve the standing issue that VariBlend faces here, namely, that the rights at issue are Spectra's, not VariBlend's, to assert.  *See generally id.*

access to the alleged Improvements purportedly withheld by Mr. Brugger, or, how the lack of 'material enhancements' from these supposed Improvements led to any lost sales . . . ." Doc. 145 at 12.  Indeed, in response to Brugger's summary judgment motion as to this damages theory, VariBlend asserts three facts:  a technical expert (Pete Walters) opines that the purportedly-withheld Improvements would have been beneficial to VariBlend; Crystal earned hundreds of thousands of dollars in revenue during the time it sold adjustable dispensers; and VariBlend projected sales over $32 million of revenue per year.  Doc. 139 at 14.  As such, it contends, "[a] jury could hear this evidence and determine that VariBlend is entitled to *some amount* of profits lost because Brugger withheld valuable technology from VariBlend." *Id.* (emphasis added).

This reasoning fails to sufficiently contend with the applicable standard.  *See Kenford Co.*, 67 N.Y.2d at 261.  VariBlend cannot point to record evidence that would allow a reasonable jury to calculate its purported lost profits to a reasonable certainty. *Id.*; *see* Doc. 139 at 14.  Indeed, VariBlend's statements are too general and insufficiently connected to one another to amount to concrete, supportive evidence of its calculation. Nor, upon its own review of the record, does the Court identify evidence that might allow a reasonable jury to find in VariBlend's favor on this damages theory.  For these reasons, the entry of summary judgment as to this theory is appropriate here.

### E.  Crystal and Brugger's Evidentiary Motions

In addition to the summary judgment motions independently brought by Counterclaim-Defendants, Crystal and Brugger together bring two evidentiary motions: a motion to preclude expert testimony by Pete Walters pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), *see* Docs. 113, 114, and a motion to strike VariBlend's supplemental expert report, *see* Docs. 106, 107. The Court takes each in turn.

### i.   Motion to Preclude Expert Testimony

In their motion to preclude the expert testimony of Pete Walters, Brugger and Crystal argue that Walters' report "(1) fails to rely on a sufficient factual basis to opine that the subject patents are Improvements, and (2) fails to employ any methodology to establish, quantitatively, that the subject patents would 'improve' VariBlend's products." Doc. 114 at 6.  Accordingly, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993), they argue that Walters should be precluded from providing his opinions at trial and his expert report should be excluded.  *See id.* Brugger and Crystal also contend that Walters is unqualified to offer non-technical opinions at trial.  *Id.* at 18–23.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.  Pursuant to the Rule:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party offering the testimony has the burden of establishing its admissibility by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987).

"As the Supreme Court explained in *Daubert*, Rule 702 requires the district court to ensure that 'any and all [expert] testimony or evidence admitted is not only relevant, but reliable.'"  *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005) (citing *Daubert*, 509 U.S. at 589).  In interpreting Rule 702, district courts, under *Daubert*, may consider the following non-exhaustive list of factors to determine whether evidence is sufficiently reliable:  (1) whether a theory or technique had been and could be tested, (2) whether it had been subjected to peer review, (3) what its error rate was, and (4) whether

scientific standards existed to govern the theory or technique's application or operation. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), "the Supreme Court held that the trial judge's gatekeeping obligation applies not only to testimony based on 'scientific' knowledge, as in *Daubert*, but also to testimony based on 'technical' or 'other specialized' knowledge." *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 358 (2d Cir. 2004).

Additionally, a proposed expert witness must be, in fact, an expert in the area about which he or she intends to testify. *Nimely*, 414 F.3d at 396 n.11. The Second Circuit has explained that the question of whether the expert is indeed qualified is important because under the Federal Rules of Evidence, an expert witness has "substantially more leeway than 'lay' witnesses" in testifying as to opinions that are not based on his or her perception. *Id.* As Rule 702 states, an expert may be qualified by virtue of his or her "knowledge, skill, experience, training, or education[.]" The "totality of a witness's background" matters. *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 422 (S.D.N.Y. 2009) (citing 29 Wright & Gold, Federal Practice and Procedure § 6265, at 246 (2008)). The witness's background only qualifies him or her to testify about the "issues or subject matter[s] within his or her area of expertise." *Haimdas v. Haimdas*, 2010 WL 652823, at *2 (E.D.N.Y. Feb. 22, 2010) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997)). The district judge thus must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004). After all, "an expert who is qualified in one field cannot offer an opinion about aspects of the case in another field for which she is not qualified." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, No. 04 Civ. 2389 (SAS), 2008 WL 1971538, at *6 n.48 (S.D.N.Y. May 7, 2008).

Courts within this Circuit have excluded expert testimony when the testimony was based on nothing more than experience and common sense. *Algarin v. New York*

*City Dep't of Correction*, 460 F. Supp. 2d 469, 477 (S.D.N.Y. 2006) (excluding a report based on the expert's personal experience and common sense because "his report is not based on reliable principles and methods"); *Reyes v. Delta Dallas Alpha Corp.*, No. 92 Civ. 4418 (AGS), 2000 WL 526851, at *3 (S.D.N.Y. May 2, 2000) (excluding testimony where "there is no evidence that [the expert] relies on anything more than common sense guidelines, as opposed to industry standards").

Applying these standards, the Court disagrees with Brugger and Crystal's contentions that Walters should be precluded from providing his opinions about the dispenser technology at trial and his original expert report should be excluded.  Doc. 114 at 6.  However, given Walters' background and expertise, the Court concludes that Walters may not provide economic opinions at trial.

As a preliminary matter, Walters is sufficiently qualified to offer technical expert testimony about the dispensers at issue in this case.  He is a packaging engineer with more than 30 years of experience in the product packaging sector, and specifically within the personal care segment.  Doc. 133-1 at 1; Doc. 135 at 1.  He has been granted over 35 patents in packaging design, construction, and solutions in this specific category.  Doc. 133-1 at 1.  Additionally, Walters previously served as the founder of Pete Walters Innovation, a product design and consulting firm that services packaging clients, and as the Director of Innovation at the Aptar Group, another company in the packaging industry.  *Id.*  As VariBlend emphasizes, Brugger and Crystal do not challenge Walters' qualifications in relation to his expert opinions about the dispenser technology at issue.  Docs. 134 at 20, 133-1, 133-4; *see also* Doc. 114 at 10–25.[13]

Furthermore, Walters' opinions as to the dispenser technology are sufficiently supported by available facts and are based upon reliable principles and methods.  *See*

---

[13] Brugger and Crystal do, however, challenge Walters' qualifications to testify about any economic or legal opinions regarding the licensing provisions at issue in this case.  Doc. 114 at 18–23; *see also supra* Part II(D)(iii).

Fed. R. Evid. 702.  To make his determinations regarding whether the patents at issue are "Improvements" as defined by the agreement, Walters indicated that he reviewed the following:  (1) the Agreement; (2) the Crystal-Holzmann Agreements; (3) various licensing agreements[14] between Brugger and Holzmann; (4) the 2018 customer letter signed by Brugger and Hwang; (5) samples of Crystal's 20 mm, 40 mm, and 42 mm dispensers; (6) drawings of VariBlend's 20 mm, 40 mm, and 49 mm dispensers with adjustable mixing ratios; (7) samples of VariBlend's 20 mm, 40 mm, and 49 mm dispensers; (8) interviews with three former VariBlend technical employees; (9) publicly available information, including available patent documents and filings with the Securities and Exchange Commission ("SEC"); (10) Brugger's deposition testimony; and (11) VariBlend's 2018 complaint.  Doc. 133-1 at 1–2.  Throughout his report, Walters relies on the observations and conclusions that he drew based on that evidence.  *See generally* Doc. 133-1.

Walters also provided information about the principles and methods he relied upon in order to come to his conclusions.  For example, in regard to the term "Improvement," Walters explained that, based on his experience, the term encompasses "tangible elements such as patented and non-patented technology" in addition to "learnings" that may include electronic drawings, best-known materials, best-known molding practices, and quality checks for dispensers.  *Id.* at 4–5.  Regarding methods, Walters indicated that he conducted:  (1) physical examinations and comparisons between dispensers, *id.* at 5–6; (2) analyses regarding the historical development of the dispensers, *id.* at 7; and (3) evaluations within the context of conventional technology in the field, *id.* at 9, among other methods, *see generally id.* at 4–21.  VariBlend provided Walters' notes about the technology that he physically inspected.  *See, e.g.*, *id.* at 23.  In those notes, the

---

[14] Neither party raises these agreements in their arguments as to the motions now before the Court.

record shows that Walters relied on exact measurements and industry knowledge to analyze the construction, functionality, and efficacy of the various dispensers.  *Id.*

The record thus shows that Walters' technical testimony about the dispenser technology at issue meets the requirements of Rule 702 and is sufficiently reliable. However, for the following reasons, the Court concludes that Walters lacks sufficient qualifications to offer non-technical opinions at trial.  *See* Doc. 114 at 18–25.

In their motion to preclude expert testimony, Brugger and Crystal specifically claim that Walters offered "opinions on the economic value of the subject patents, legal opinions on the proper construction and application of licensing provisions, and legal opinions on patent inventorship and patent prosecution practice before the USPTO."  *Id.* at 18.  Because Walters is a "purported expert in packaging engineering, [and] is not an economist, lawyer, or patent agent," they contend, he should be precluded from offering opinions of that nature at trial.  *Id.*

Applying the principles laid out in *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004), the Court agrees that Walters is not qualified as an economic or legal expert.  Walters has extensive experience as an engineer in the consumer packaging industry.  But he has not proffered information showing that he has specialized "knowledge, education, experience, or skill" within the areas of patent finance, economics, or law.  Accordingly, Walters may only testify as to his opinions regarding the dispenser technology at trial.  VariBlend may use Walters' expert report but may not offer it as evidence to substantiate its damages claims.  *See supra* Part II(D)(iii); Doc. 139 at 14; Doc. 144 at 10–11.

### ii.  Motion to Strike Supplemental Expert Report

In their motion to strike, Crystal and Brugger argue that VariBlend's supplemental expert report was served out of time, without leave, and under a new theory of breach that was not based on new information.  Doc. 107 at 4; *see also* Docs. 98-1, 133-1.  VariBlend

contends that the supplemental report was proper and indeed mandated by Federal Rule of Civil Procedure 26(e).  Doc. 108 at 7–8.

As a preliminary matter, Rule 26 requires that expert reports contain "a *complete* statement of *all opinions* the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  It also requires that reports include information about the considered facts, the exhibits reviewed, and the witness' qualifications, among other information.  *Id.*  Pursuant to Rule 26(e)(1)(A), a party must provide a supplement to an initial disclosure where "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the parties during the discovery process or in writing."  Such a supplement must be provided "in a timely manner."[15]  Fed. R. Civ. P. 26(e)(1)(A).

Courts in this Circuit have found that a supplemental expert report may be appropriate where, for example, "the expert subsequently learns of information that was previously unknown or unavailable, and the new information renders the earlier report incomplete or inaccurate."  *Lewis v. FMC Corp.*, 786 F. Supp. 2d 690, 705 (W.D.N.Y. 2011).  On the other hand, courts in this Circuit have also noted that Rule 26 "is not . . . a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report."  *Lidle v. Cirrus Design Corp.*, No. 8 Civ. 1253 (BSJ), 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).  And Rule 26 does not permit "the disclosing party to offer a new theory out of time when the responding party has demonstrated that the disclosing party's initial theory is incorrect." *Bozick v. Conagra Foods, Inc.*, No. 19 Civ. 4045 (LJL), 2021 WL 1198320, at *3

---

[15] Specifically, Rule 26 provides that, for expert witnesses, "[a]ny additions or changes to [the provided] information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

(S.D.N.Y. Mar. 30, 2021). Such conduct would render the completeness requirements of Rule 26(a)(2)(B) meaningless.

Under Rule 37(c)(1), a court may sanction a party that "fails to provide information . . . as required by Rule 26(a) or (e)." Fed. R. Civ. P. 37(c)(1). "A district court has wide discretion" to impose sanctions under Federal Rule of Civil Procedure 37. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Such sanctions include, among other things, the preclusion of evidence. *See id.* at 296. The parties agree that the Court must consider four factors in its assessment of whether to strike VariBlend's supplemental report, namely: (1) VariBlend's explanation for its failure to comply with the disclosure requirement; (2) the importance of the testimony; (3) the prejudice suffered by the opposing parties as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance. *Id.*; *see also* Docs. 107 at 6, 108 at 5.

In this case, the Court concludes that VariBlend's supplemental expert report must be stricken. First, VariBlend concedes that it does not have an adequate explanation for its failure to comply with the Rule 26 disclosure requirement. In its opposition, it states that Walters' failure to include the new theory of breach (outlined in the supplemental report) was due to "an innocent mistake," rather than, for example, the availability of new information.[16] Doc. 108 at 5; *see also Lewis v*, 786 F. Supp. 2d at 705. But Rule 26 calls for a better explanation. Indeed, the rule makes clear that an expert's report should be complete based on available information, Fed. R. Civ. P. 26(a)(2)(B), and it provides for timely supplements where a party later learns information that indicates that the report is incomplete or incorrect, Fed. R. Civ. P. 26(e). And courts have made clear that Rule 26 is

---

[16] VariBlend notes that Walters decided that a supplemental report was necessary after "re-reading his initial report, *and considering the many issues raised therein in advance of his deposition*." Doc. 108 at 6 (emphasis added). Crystal and Brugger contend that "Mr. Walters thus seemingly formed his supplemental opinion after reading Defendants expert's Rebuttal to the theories and conclusions that [Walters] offered in his Opening Report." Doc. 107 at 7.

not an avenue for parties to retroactively amend a deficient report. *Lidle*, 2009 WL
4907201, at *5; *Bozick*, 2021 WL 1198320, at *3.

As to the importance of the supplemental report, VariBlend has not shown that
Walters' supplemental opinions are "essential to proving" its breach of contract claim.
*Davis*, 469 F.3d at 296; *see* Docs. 133-1, 133-4.  As Crystal and Brugger note, "Mr.
Walters' Opening Expert Report already concludes that eight patents are 'Improvements'
under the license agreement."  Doc. 107 at 8.  The supplemental expert report adds an
additional patent, U.S. 9,346,069B2, as an "Improvement," under the Agreement.
*Compare* Doc. 133-1 *with* Doc. 133-4.  While VariBlend contends that "Walters' opinion
as to each such technology is important," a review of the applicable caselaw shows that
courts use the term "important" more narrowly in this context.  Doc. 108 at 6; *see Softel,
Inc. v. Dragon Medical and Scientific Communications, Inc.*, 118 F.3d 955, 962 (2d Cir.
1997) (noting that the prejudice stemming from the preclusion of an expert's report is
"slight" where (1) the party had an opportunity to enter the report into evidence and (2)
another expert is available); *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir.
1988) (concluding that, in a police brutality case, the testimony of eye-witnesses was
"important" because it corroborated Plaintiff's version of events and bolstered his
credibility).  Considering prior cases that address this question, the issue before the Court
is not whether the evidence is subjectively important to the party that seeks its inclusion,
but rather the degree to which it is necessary to prove a claim.  *See Davis*, 469 F.3d at
296.  Here, the Court finds that it is not necessary.

In regard to the prejudice that Brugger and Crystal will suffer if the supplemental
report is included, the Court disagrees with VariBlend's contention that "there is no
prejudice to defendants."  Doc. 108 at 6.  However, it is also not completely persuaded by
Brugger and Crystal's contention that "Plaintiff's Supplemental Expert Report effectively
restarts the expert discovery process."  Doc. 107 at 8.  The inclusion of the report would
certainly require Brugger and Crystal to direct their expert to conduct additional analyses.

Critically, they would have to do so because of VariBlend's failure to comply with the completeness requirements of Rule 26, not due to the sudden availability of new information or previously unavailable data.  Accordingly, this factor also weighs in Brugger and Crystal's favor.

Finally, while a continuance is possible, it is inappropriate here.  *See, Softel, Inc.* 118 F.3d at 962.  In this case, VariBlend waited to file the supplemental report until after the close of expert discovery, and after Brugger and Crystal served their expert's rebuttal report.  *See* Doc. 107 at 11.  Three months passed between the preparation of Walters' initial report and his supplemental report.  *See* Docs. 133-1 at 1, 133-4 at 3.  And, importantly, VariBlend was previously granted two extensions for serving the initial report, among other discovery extensions.  *See* Docs. 86, 88.  As the Second Circuit noted in *Softel, Inc.*, another intellectual property case, "expeditious management of discovery schedules is especially important in cases of this nature because they require extensive expert involvement over lengthy periods of time."  118 F.3d at 962.  "Therefore," the Second Circuit noted, "the burden on the trial court of granting a continuance [in cases involving intellectual property disputes] is greater than in some other cases."  *Id.*

For all these reasons, the Court grants Brugger and Crystal's motion to strike, Doc. 106.  *Davis*, 469 F.3d at 296.

### III.   CONCLUSION

For the foregoing reasons, the Court DENIES Counterclaim-Defendants' motion for partial summary judgment, Doc. 110, GRANTS Crystal's motion for summary judgment, Doc. 121, and GRANTS in in part and DENIES in part Brugger's motion for summary judgment, Doc. 117.  The Court further DENIES Brugger and Crystal's motion to preclude expert testimony, Doc. 113, and GRANTS their motion to strike VariBlend's supplemental expert report, Doc. 106.

The parties are directed to appear for a telephonic status conference at 10:00 a.m. on December 13, 2022.  The parties are directed to dial (877) 411-9748 and to enter access code 3029857#.

The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 106, 110, 113, 117, 121.

It is SO ORDERED.

Dated:    November 22, 2022
             New York, New York

_____

EDGARDO RAMOS, U.S.D.J.